# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**43**

**CA 14-00318**

PRESENT: SMITH, J.P., FAHEY, CARNI, VALENTINO, AND WHALEN, JJ.

---

IN THE MATTER OF COLONIAL SURETY COMPANY,
PETITIONER-APPELLANT,

V                                                    MEMORANDUM AND ORDER

LAKEVIEW ADVISORS, LLC, ET AL., RESPONDENTS,
RESOLUTION MANAGEMENT, LLC, NEAVERTH
ENTERPRISES, LLC, ARENA DEVELOPMENT, LLC AND
ROBERT J. GOODYEAR, RESPONDENTS-RESPONDENTS.
(PROCEEDING NO. 1.)

-----------------------------------------------

IN THE MATTER OF COLONIAL SURETY COMPANY,
PETITIONER-APPELLANT,

V

NEAVERTH ENTERPRISES, LLC, ARENA DEVELOPMENT,
LLC, ROBERT J. GOODYEAR, ANITA M. HANSEN AND
GARY ALBANESE, RESPONDENTS-RESPONDENTS.
(PROCEEDING NO. 2.)
(APPEAL NO. 1.)

---

UNDERBERG & KESSLER LLP, BUFFALO (EDWARD P. YANKELUNAS OF COUNSEL),
AND MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP, NEW YORK CITY, FOR
PETITIONER-APPELLANT.

LIPPES MATHIAS WEXLER FRIEDMAN LLP, BUFFALO (DENNIS C. VACCO OF
COUNSEL), FOR RESPONDENTS-RESPONDENTS RESOLUTION MANAGEMENT, LLC,
NEAVERTH ENTERPRISES, LLC, ARENA DEVELOPMENT, LLC AND ROBERT J.
GOODYEAR.

---

Appeal from an order and judgment (one paper) of the Supreme
Court, Erie County (John A. Michalek, J.), entered September 26, 2013.
The order and judgment dismissed the proceedings, released certain
escrow funds and terminated an undertaking.

It is hereby ORDERED that said appeal from that part of the order
and judgment granting relief with respect to respondents Anita M.
Hansen and Gary Albanese is unanimously dismissed, the order and
judgment is reversed on the law without costs, the amended petition in
proceeding No. 1 and the petition in proceeding No. 2 are granted, and
the matter is remitted to Supreme Court, Erie County, for further
proceedings in accordance with the following Memorandum:  These
proceedings pursuant to CPLR article 52 have previously been before

us, and the facts of this litigation appear in two of our prior orders in this case (*Matter of Colonial Sur. Co. v Neaverth Enters., LLC*, 101 AD3d 1712; *Colonial Sur. Co. v Lakeview Advisors, LLC*, 93 AD3d 1253). We add here only that these consolidated appeals concern the most recent decision of Supreme Court following a hearing that it held to make the determinations directed by our prior orders. In appeal No. 1, petitioner, Colonial Surety Company (Colonial), contends that the court erred in denying its amended petition in proceeding No. 1 and petition in proceeding No. 2, releasing certain escrow funds, and terminating Colonial's undertaking. In appeal No. 2, Colonial contends that the court erred in granting the motion of respondents Resolution Management, LLC (Resolution), Anita M. Hansen, and Gary Albanese for an order striking Colonial's demand for a jury trial.

We note at the outset that the parties entered into a stipulation in proceeding No. 2 discontinuing that proceeding against Hansen and Albanese with prejudice. We therefore dismiss as moot those parts of the appeals from the order and judgment in appeal No. 1 and the order in appeal No. 2 insofar as they granted relief with respect to those respondents in proceeding No. 2.

On the merits, we address first Colonial's contentions in appeal No. 2 because, to the extent Colonial may have been entitled to a jury trial, we would reverse the orders in both appeals and remit the matter to Supreme Court for a trial. Ultimately, however, we conclude that the court properly struck Colonial's demands for a jury trial. "[T]he right to trial by jury is zealously protected in our jurisprudence and yields only to the most compelling circumstances" (*John W. Cowper Co. v Buffalo Hotel Dev. Venture*, 99 AD2d 19, 21). "Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever" (NY Const, art 1, § 2). "That guarantee extends to all causes of action to which the right attached at the time of adoption of the 1894 Constitution . . . Historically, however, actions at law were tried by a jury, [and] matters cognizable in equity were tried by the Chancellor. Even though the two systems have merged, vestiges of the law-equity dichotomy remain in the area relating to trial by jury" (*Cowper*, 99 AD2d at 21).

Thus, the right to a jury trial "depends upon the nature of the relief sought" (*Arrow Communication Labs. v Pico Prods.*, 219 AD2d 859, 860). Under the CPLR, a jury trial is available in an action "in which a party demands and sets forth facts which would permit a judgment for a sum of money *only*" (CPLR 4101 [1] [emphasis added]). Where a plaintiff joins legal and equitable causes of action in a complaint, it waives its right to a jury trial (see *Sullivan v Troser Mgmt., Inc.*, 75 AD3d 1059, 1060; *Anesthesia Assoc. of Mount Kisco, LLP v Northern Westchester Hosp. Ctr.*, 59 AD3d 481, 482-483; *Cowper*, 99 AD2d at 21). However, "if 'a sum of money alone can provide full relief to the plaintiff under the facts alleged, then there is a right to a jury trial' " (*Arrow Communication Labs.*, 219 AD2d at 860; see *Cadwalader Wickersham & Taft v Spinale*, 177 AD2d 315, 316).

In *V P Supply Corp. v Normand* (27 AD2d 797), a case involving a proceeding pursuant to CPLR 5227 to "obtain the payment of a debt owed to [a] judgment *debtor*" (*id.* at 797 [emphasis added]), we concluded that there "may [be] a right of jury trial (CPLR 410)" (*id.* at 798). The jury trial demands in the appeals before us, however, were made by Colonial, i.e., a judgment *creditor*, in the context of proceedings it had commenced to enforce its own money judgment. Under such circumstances, "whether trial by jury is required . . . [is a] nicer question" (David D. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5225:6 at 391). Professor Siegel posited that "it would appear that [the judgment creditor] cannot insist on one. The context of [the judgment creditor's] standing in the proceeding makes it the equivalent of the old creditor's bill in equity, or in any event analogizes to where a plaintiff seeks both equitable and legal relief in respect of the same claim in the same action, which results in a waiver by the plaintiff but not by the defendant . . . [The judgment creditor] in that situation is seeking legal relief insofar as he wants an adjudication of whether [respondent] owes a money debt [to the judgment debtor], and equitable relief in that he wants the debt, if found due, to be paid not to the [judgment debtor], but to the [judgment] creditor" (*id.*).

That position was based in part on *Leedpak, Inc. v Julian* (78 Misc 2d 519). As in the instant case, the petitioner therein, a judgment creditor, "move[d] under CPLR 5227 for an order requiring [the] respondent to pay the amount of the judgment on the basis that [the] respondent [was] indebted to the judgment debtor in an amount exceeding the judgment" (*id.* at 519-520). While the court in *Leedpak* held that there was a right to a jury trial "at least as to [the] respondent" (*id.* at 520, citing *V P Supply Corp.*, 27 AD2d at 798), the situation was "somewhat different . . . [w]ith respect to [the] petitioner" (*id.* at 521). Specifically, the court in *Leedpak* wrote that "[t]he common-law obligation of [the] respondent, if any, [was] to the judgment debtor, not to [the] petitioner. [The] [p]etitioner [asked] the court to direct [the] respondent to pay to [the] petitioner a debt owed to a third person, the judgment debtor. This would seem to be analogous to, and an outgrowth of, the ancient creditor's bill in equity. [The] [p]etitioner is in a sense asking both legal and equitable relief—legal relief in requiring [the] respondent to pay a debt allegedly owed by [the] respondent to the judgment debtor, and equitable relief in requiring the proceeds to be paid to [the] petitioner for application on the judgment debtor's debt to [the] petitioner. The situation thus[] 'may in some respects be analogized to the difference between a plaintiff who chooses to join legal and equitable causes in a suit in equity and a defendant who is brought into equity and required, among other things, to defend there a law cause of action. It is held that the plaintiff waives the right by joinder . . . but that [the] defendant does not' " (*id.*, quoting *Matter of Garfield*, 14 NY2d 251, 258; *cf. Klein v Loeb Holding Corp.*, 24 Misc 3d 899, 901-905).

Likewise, we conclude that enforcement of a judgment under CPLR 5225 and 5227 against a party other than the judgment debtor is an outgrowth of the "ancient creditor's bill in equity," which was used

after all remedies at law had been exhausted.  We thus conclude that Colonial's use of CPLR 5225 and 5227 in this case is in furtherance of both legal and equitable relief and, therefore, that Colonial is not entitled to a jury trial on those combined legal and equitable claims (*see Leedpak, Inc.*, 78 Misc 2d at 519-520; David D. Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5225:6 at 391).

We now turn to appeal No. 1, and we provide a brief summary of the facts giving rise to the proceedings.  By its amended petition in proceeding No. 1, Colonial sought to enforce a judgment it obtained against nonparty Paul W. O'Brien, the manager and sole principal of respondent Lakeview Advisers, LLC (Lakeview).  Colonial alleged that Lakeview was O'Brien's alter ego, and sought to enforce the judgment against O'Brien by obtaining an order directing Resolution to give Colonial certain payments that Resolution purportedly owed to Lakeview.  According to Resolution's president, Mark Bohn, Resolution was formed as a "shell corporation" or "single-purpose entity" to acquire the assets of nonparty FA Holdings in Bankruptcy Court.  Bohn was also president of FA Holdings, which entered bankruptcy in 2008, and he acknowledged that Resolution borrowed the money to purchase the assets of FA Holdings from Lakeview.

While proceeding No. 1 was pending, however, Supreme Court directed Resolution to deposit the disputed payments into an escrow account.  According to Resolution and Lakeview, Lakeview itself was not entitled to those payments inasmuch as Lakeview was simply a conduit for funds loaned indirectly by the noteholders to Resolution through Lakeview.  Resolution further alleged that, as a consequence of that arrangement, it had renegotiated the loans made to it by Lakeview such that Resolution owed the money on those loans directly to the noteholders, rather than to Lakeview, and thereby eliminated its debt to Lakeview.

At the hearing held by the court to make the determinations directed by our prior orders, O'Brien and Bohn maintained, inter alia, that Lakeview was used as a mere conduit for the loans from the noteholders to Resolution.  Moreover, both O'Brien and Bohn maintained that the loans owed by Resolution to Lakeview were renegotiated in February 2010 such that Resolution became responsible for paying the noteholders directly.  In March 2010, however, both Bohn and O'Brien represented to the trustee in the FA Holdings bankruptcy proceeding that no renegotiation or reformation of the loans had taken place.  In view of that representation, we conclude that respondents are barred by judicial estoppel from asserting that the loan modification converting Resolution's obligation to repay Lakeview into an obligation to repay the noteholders directly—thereby extinguishing the debt of Resolution to Lakeview, upon which Colonial has a claim—actually occurred (*see Pacer's Bar & Grill, Inc. v Weinson's, Inc.*, 46 AD3d 1473, 1474; *see also Kittner v Eastern Mut. Ins. Co.*, 80 AD3d 843, 846-847, *lv dismissed* 16 NY3d 890, 18 NY3d 911; *D & L Holdings v Goldman Co.*, 287 AD2d 65, 71-72).

Having concluded that respondents are judicially estopped from

contending that Resolution's debt to Lakeview is extinct, we turn to the question whether, following the hearing, the court properly concluded that Colonial is not entitled to collect against the noteholders pursuant to CPLR 5225 (b), which considers the payment or delivery of property of a judgment debtor, or against Resolution pursuant to CPLR 5227, which considers payments of debts owed to a judgment debtor, pursuant to CPLR 5240.  Section 5240 provides, inter alia, that "[t]he court may at any time . . . make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."

We conclude that the court erred in applying CPLR 5240 here, and we therefore reverse the order and judgment in appeal No. 1, grant the amended petition in proceeding No. 1 and the petition in proceeding No. 2, and remit the matter to Supreme Court to grant an injunction prohibiting the dissipation of assets prior to the satisfaction of Colonial's judgment against O'Brien.  As we have noted, the court's "broad discretionary power" to use equity to prevent enforcement of a judgment is not unlimited, and it must balance the "harm likely to result from execution, against the necessity of using that immediate means of attempted satisfaction" (*Colonial Sur. Co.*, 93 AD3d at 1256). Here, Lakeview and Resolution essentially contend, and the court agreed, that because the debt between Resolution and Lakeview was effectively illusory, it would be unfair to allow Colonial, a stranger to Resolution and the Lakeview-Resolution transaction, to enforce its judgment against that debt.  We conclude, however, that Resolution used Lakeview, if not to perpetrate a fraud on the Bankruptcy Court, to conceal the true nature of the loan to Resolution from the Bankruptcy Court's view, and it would contravene public policy to allow Resolution to appear to enter into a valid loan agreement with Lakeview for purposes of the FA Holdings bankruptcy proceeding but then invoke CPLR 5240 in an attempt to avoid the effect of that loan agreement in this proceeding (*see Greenleaf v Lachman*, 216 AD2d 65, 66, *lv denied* 88 NY2d 802).  Indeed, the record reflects that the bulk of the loan by Lakeview to Resolution came directly from Bohn and the other principal of Resolution, or from loans based on property owned by them, and that the noteholders are largely mere "fronts" for Bohn and the other principal of Resolution, filtered through Lakeview to create the appearance of an arm's-length loan to buy the assets of FA Holdings, in order to alleviate the suspect nature of the transaction (*see e.g. Wolverton v Shell Oil Co.*, 442 F2d 666, 669), and the special scrutiny that comes with such sales to bankrupts or their privies (*see e.g. Matter of Silver Bros. Co., Inc.*, 179 BR 986, 1010 n 14).

Entered:  February 6, 2015                          Frances E. Cafarell
                                                    Clerk of the Court