OPINION OF THE COURT
Jeffrey S. Sunshine, J.
*1143 Introduction
The question before the court is whether the parties in the case at bar had the “justified expectation” that they were married in 2014 when they participated in a religious ceremony but did not obtain a marriage license. The defendant alleges that he was married in 1987, prior to the alleged marriage between plaintiff and defendant, and still is married to another individual with whom he has six children. The plaintiff in a sworn affidavit from a presently pending Family Court proceeding, the same proceeding which she requests to consolidate to the Supreme Court, admits that she was aware of the defendant’s prior marriage and attempts to put forth a contrary position in commencing these proceedings in Supreme Court. This court must determine whether under New York law, without obtaining a marriage license, both parties had a “justified expectation” that as a result of the ceremony they were actually married.
Procedural History
On May 12, 2016, the plaintiff moved by emergency order to show cause (motion sequence No. 1) requesting the following relief: (1) ordering removal to this court and consolidation of the corresponding Family Court, Richmond County matter; (2) ordering a stay of the Family Court, Richmond County matter; (3) directing that the plaintiff have temporary custody of the parties’ infant or otherwise ordering an expedited hearing on custody; (4) restraining and enjoining defendant and his attorney, agents, heirs or assigns or anyone acting in concert from transferring, removing, dissipating, encumbering or hypothecating any assets subject to equitable distribution pending the determination of the underlying matrimonial action; (5) directing the defendant to pay for all health-related expenses, including but not limited to, the costs of medical, dental, and optical insurance and the cost of unreimbursed medical, dental, therapy, optical and pharmaceutical expenses of the parties’ child; (6) awarding the plaintiff temporary counsel fees in the sum of $25,000; (7) ordering an immediate preliminary conference; and (8) awarding the plaintiff such other, further, and different relief as to the court may seem just, proper, and equitable.
On May 12, 2016 this court signed the plaintiff’s order to show cause and selected an adjournment date with all counsel, but struck plaintiff’s ex parte relief requested in motion sequence No. 1.
*1144 On June 17, 2016, the defendant filed an affirmation in opposition to the plaintiff’s order to show cause as well as a cross motion (motion sequence No. 2) requesting the following relief: (1) dismissal of this action; (2) denial of all other relief and maintenance of the custody action in Richmond County Family Court, provided this court does not dismiss the action; (3) change of venue of the plaintiff’s order to show cause (motion sequence No. 1) from this court to Richmond County Family Court, provided this court does not dismiss the action or immediately enter judgment; (4) awarding counsel fees to the defendant; and (5) awarding the defendant such other, further and different relief as is just, proper, and equitable. The defendant’s order to show cause (motion sequence No. 2) was held in the court on June 24, 2016.
On June 24, 2016, the Attorney for the Child submitted an affirmation in opposition to the plaintiff’s order to show cause. On June 24, 2016, the plaintiff submitted an affirmation in opposition to the defendant’s cross motion and reply to the plaintiff’s order to show cause. This court heard oral argument on the plaintiff’s motion and defendant’s cross motion on June 24, 2016.
There is one child at issue in this matter, A.N., born December 2014. It is not disputed that the parties in this action are the parents of this child. The plaintiff in this Kings County Supreme Court action commenced a separate action for custody and child support on April 29, 2015 in Family Court, Richmond County. An Attorney for the Child, Francine Scotto, Esq., was appointed in that proceeding regarding custody and visitation who also appeared and opposed plaintiff’s application.[1] A temporary order of custody was issued by the referee in Family Court on June 9, 2015 granting temporary custody of the subject child to the father. As of the date of this writing there are both Family Court and Criminal Court proceedings ongoing in Richmond County.
Validity of Parties’ Marriage
As a threshold issue it is necessary for the court to determine the validity of the parties’ alleged marriage. The court’s determination of the validity of the alleged marriage is paramount because if the court determines that the alleged *1145 marriage is not valid, the inquiry, would cease. However, if the court were to find that the marriage was valid, the court would then be required to determine whether the marriage was void.[2] Even if the court were to determine the parties’ alleged marriage were void, under New York law the plaintiff would be entitled to seek certain economic relief in Supreme Court, namely, spousal maintenance, equitable distribution and counsel fees (see DeLyra v DeLyra, 141 AD2d 75, 79 [2d Dept 1988], affd 74 NY2d 872 [1989]).
Parties’ Contentions
The Plaintiff’s Affirmation
The plaintiff contends that she and the defendant were married in a religious ceremony on October 4, 2014. According to the plaintiff, she and the defendant were married in the presence of the imam and witnesses.[3] The plaintiff avers that the defendant paid “the traditional Islamic dowry” to the plaintiff and that after the October 4, 2014 wedding the two shared a residency.
The plaintiff argues in this Supreme Court proceeding that she did not know of the defendant’s alleged previous marriage at the time of the October 4, 2014 ceremony. In early 2015, the plaintiff contends that she received a call from a woman who claimed that she was married to the defendant and resided with the defendant. The plaintiff avers that after the phone call, she confronted the defendant and he explained that he was already married at the time of the October 4, 2014 ceremony. The plaintiff argues that she then requested that the defendant leave their shared residency and that he complied.
The plaintiff avers that shortly after the defendant left their shared residence, she commenced an action in the Family Court *1146 of Richmond County dated June 9, 2015. The plaintiff commenced a divorce action in Kings County on April 6, 2016. The plaintiff contends that her previous counsel did not advise her that she could commence a divorce action.
The Defendant’s Opposition and Affirmation
Counsel for the defendant requests that this court dismiss the instant action for lack of jurisdiction as the relationship between the parties was an extramarital affair resulting in a pregnancy. Counsel for the defendant submits an alleged marriage certificate[4] and wedding photo from the purported wedding in 1987 (both of which include a woman who is not the plaintiff) and argues that the defendant and his wife have six children together. He contends that plaintiff “is speciously alleging the existence of a marriage even though she knows that not to be the case, in order to facilitate her attempt to remove her custody case from Richmond County Family Court.” He argues that she wants a “do-over,” and is essentially forum shopping after receiving a less than favorable decision from Family Court.
The defendant argues that the plaintiff became pregnant “on purpose” with the intent of trapping him into a relationship with her and/or for financial reasons.[5] Counsel for the defendant avers that plaintiff knew before the October 4, 2014 ceremony that the defendant was married to another woman. The defendant contends that he and the plaintiff neither intended to get legally married nor did either party believe they were married to each other. The defendant contends he and the plaintiff met the imam the day of the alleged wedding ceremony and that the plaintiff discussed the marriage certificate with the imam, and was told that the certificate was not a legal document and would have no legal effect. The defendant contends that the imam has agreed to give him an affidavit attesting that the certificate was not legally binding. The defendant argues that the two obtained a “marriage certificate” to please the plaintiff’s parents who were coming to the United States. The defendant contends that the plaintiff told him that her father would disown her if her father knew she was unmarried and pregnant.
*1147 The defendant contends that the plaintiff admits in her verified complaint in the instant Supreme Court action dated March 25, 2016, that no legal civil marriage was entered into, and no legal civil marriage exists. Counsel for the defendant contends that the plaintiff’s affidavit submitted to the Family Court on June 9, 2015 is in contradiction with the affidavit submitted to this court in the instant case. Significantly, in the proceeding in Family Court, which the plaintiff commenced, in an affidavit dated June 9, 2015, the plaintiff stated that
“she and the Defendant were engaged in a relationship during which the Defendant led her to believe that he was in the midst of a divorce proceeding and that until the divorce was finalized, the two would only be able to be married by a religious institution and not by the state.”
Counsel for the defendant contends that the plaintiff sent text messages to the defendant which indicate that the plaintiff was aware that the defendant was married to another woman. The defendant contends that the plaintiff’s sister was also aware that the defendant was married prior to the parties’ wedding in 2014. In an email dated January 9, 2014, the plaintiff’s oldest sister sent an email to the defendant, inquiring as to whether the defendant’s divorce was in process. The defendant avers that “there was nothing at all other than the plaintiff and [him] going to the mosque and explaining to the Imam that she needed some kind of document to show her father so he didn’t disown her.” The defendant contends that the imam gave the parties a certificate specifically advising that it was not legally binding because the two had no marriage license and the defendant was already married to another woman.
Counsel for the defendant contends that the instant claim “is an attempt to perpetuate a fraud upon this Court.” Counsel for the defendant doubts the veracity of the plaintiff’s statement that both of the plaintiff’s prior counsel did not advise her that she could file for divorce. Counsel for the defendant contends that the plaintiff has a history of fraudulent behavior and is speciously alleging the existence of a marriage in order to remove her custody case from Richmond County Family Court.[6] Counsel for the defendant contends “[t]hat she knows she is not legally married is illustrated by the fact that she filed a *1148 Family Court custody case, and a separate child support case, in Richmond county more than a year ago.”[7]
Counsel for the defendant contends that even if the court does find that the parties were married, the court should enter judgment immediately and deny all ancillary relief. The defendant avers that any purported marriage could have only been a duration of a few months as the parties’ appearance at the mosque was in October of 2014 and the order of protection against the defendant was obtained in April 2015.
The Plaintiff’s Reply and Opposition
Counsel for the plaintiff again contends that the parties were lawfully married in 2014. Counsel contends that New York’s enforcement of religious marriages specifically protects women in the plaintiff’s position who reasonably rely on the legitimacy of their religious practices. The plaintiff again contends that she did not file for divorce originally because her prior counsel did not advise her that she could do so.
Counsel for the plaintiff contends that the defendant does not dispute the occasion of the marriage ceremony at the mosque nor the marriage certificate. Counsel avers that the defendant does not dispute that the parties went to a mosque of the defendant’s choosing and at his discretion. The plaintiff avers that the défendant does not dispute that there was a marriage ceremony at the mosque. The plaintiff contends that the defendant asked her father for his blessing for the wedding and that the plaintiff’s father gave his blessing already knowing that the plaintiff was pregnant. The plaintiff contends that the two planned a larger wedding ceremony in Morocco during summer 2015.
The plaintiff again denies that she was aware of the defendant’s alleged prior marriage at the time of the October 4, 2014 *1149 ceremony.[8] The plaintiff contends that the defendant did not tell her that he was married to another before their alleged marriage. However, the plaintiff contends that the defendant had told her that he had two children and that he shared a residence with his mother.
Counsel for the plaintiff contends that the two parties had an extensive relationship and already lived with each other for many months at the time of marriage. The plaintiff contends that the defendant had been staying with her in 2013 at her former apartment in Staten Island.[9]
Counsel for the plaintiff avers that the two parties were engaged on June 3, 2014 and that the baby was to be delivered approximately two months after the marriage. The plaintiff contends that she became engaged to and then pregnant by the defendant. The plaintiff avers that she and the defendant moved to a bigger house together and bought furniture. The plaintiff contends that the two jointly rented the house and had credit cards under both of their names.
The plaintiff contends that after she gave birth, she received a call from the defendant’s alleged wife. The plaintiff contends that the alleged wife threatened to kill her if she did not leave the defendant. She avers that she confronted the defendant and she contends that the defendant told her that he was married to her but he was allowed to have multiple wives. She contends that at this point, she asked the defendant to vacate their shared residency.
The plaintiff requests that if the court determines that the defendant was already married, the court should not enter immediate judgment as counsel contends that the defendant demonstrates no prima facie entitlement to judgment as a matter of law. Counsel avers that the defendant provides no evidence unequivocally demonstrating that he was already married at the time of his marriage to the plaintiff, such as a verified marriage license. Counsel for the plaintiff avers that *1150 he doubts the authenticity of the proposed Jordan marriage certificate.
During oral argument the court participated in the following colloquy on the record with plaintiffs counsel:
“THE COURT: Is it your position that your client was married to this defendant before he was married to his present wife?
“COUNSEL: I don’t know. I’ve seen a document just now from counsel which purports to be a marriage license and a translation of the same, a marriage certificate.
“THE COURT: I’m talking about his present wife.
“COUNSEL: I don’t know.
“THE COURT: You don’t know? She believes that she is his first wife?
“COUNSEL: She believes it’s possible.
“THE COURT: She’s prepared to state under oath today that she believes that she is his first wife?
“COUNSEL: She is prepared to say she was married in a religious ceremony.
“THE COURT: That is not my question.
“COUNSEL: Well, she doesn’t know if she is his first wife, which is why she brought the action in the alternative, your honor.
“THE COURT: Thank you.”
The Attorney for the Child takes no position in regards to the validity of the parties’ marriage but is opposed to removal and consolidation. The court reserved decision after hearing oral argument on June 24, 2016.
Discussion
As a threshold matter the court must determine whether the parties entered into a valid marriage in 2014 despite the parties not obtaining a marriage license. In New York, while the Domestic Relations Law deems it necessary for all persons intending to be married to obtain a marriage license (see Domestic Relations Law § 13), a marriage is not void for the failure to obtain a marriage license if the marriage is solemnized (see Domestic Relations Law § 25). The Appellate Division, Second Department’s decision in Matter of Farraj (72 AD3d 1082 [2010]) analyzed the validity of a couple’s marriage in which the parties participated in a “formal religious ceremony,” but a marriage license was never obtained.
*1151 In Farraj, the petitioner and decedent participated in a formal marriage ceremony in accordance with Islamic law in 2003, at the home of the petitioner’s brother in Clifton, New Jersey. Prior to the marriage ceremony, the decedent was a resident of New York and the petitioner lived at her brother’s residence in New Jersey. An imam (Islamic clergyman) came from New York to New Jersey to solemnize the marriage. However, a marriage license was not obtained. The decedent and the petitioner lived together in New York until the decedent’s death in July 2007. The decedent died intestate and letters of administration were issued to the appellant, the decedent’s son from a prior marriage. Subsequently, the petitioner filed a petition to compel an accounting of the decedent’s estate. The appellant moved to dismiss the petition pursuant to CPLR 3211 (a) (3) on the ground that the petitioner lacked standing as a surviving spouse, since her marriage to the decedent was invalid under New Jersey law. (Matter of Farraj, 72 AD3d at 1083.)
In Farraj, the Surrogate’s Court, Kings County held that New York law should be applied as New York had the “most significant relationship to the spouses and the marriage.” (Id. at 1084.) The Surrogate’s Court held that despite the couple not procuring a valid marriage license, the marriage itself was valid in New York because “[t]he petitioner and the decedent had a justified expectation that they were married, since they participated in a formal marriage ceremony in accordance with Islamic law” (id.). The court went on to further define their “justified expectation,” stating the couple “believed themselves married, had an expectation that they were married, and believed that their marriage ceremony had resulted in a valid marriage.” (Matter of Farraj, 23 Misc 3d 1109[A], 2009 NY Slip Op 50684[U], *2 [Sur Ct, Kings County 2009].) The Appellate Division, Second Department, affirmed that “[t]he petitioner and the decedent had a justified expectation that they were married, since they participated in a formal marriage ceremony in accordance with Islamic law.” (Farraj, 72 AD3d at 1084.)
The relevant facts relating to the marriage ceremony in the case at bar analogize with those in Farraj (without the necessity of determining whether to apply New York or New Jersey law) as the parties were allegedly married in 2014 in a religious ceremony, which was overseen by an imam and a valid marriage license was never obtained. However, in the Farraj matter the Court found that the parties had a “justified expecta *1152 tion” that their marriage was valid. In the case at bar the question of whether the parties had a “justified expectation” that the parties were married is in dispute.
The plaintiff argues, as stated above, that she genuinely-believed she and the defendant were married in 2014. She contends that she was not aware of the defendant’s prior marriage before the 2014 ceremony. She proffers evidence of a religious marriage certificate dated October 4, 2014 and claims the parties lived together briefly before and after the birth of their child before separating.
The defendant disputes the plaintiff’s position and argues that the parties understood that they could not be legally married because they were both aware that he was already married to another individual. He contends that the parties never intended to be “legally” married, but only went through with the marriage ceremony to “mislead the plaintiff’s father.” The defendant annexes a 1987 marriage certificate from “The Hashemite Kingdom of Jordan” which has been translated into the English language and indicates the date of marriage between the defendant and a third party as June 24, 1987. Defendant also points out that the plaintiff, in her own complaint filed to commence this proceeding, dated March 25, 2016, on line 9 indicates that “the parties did not obtain a civil marriage license.” At oral argument defendant’s counsel indicated that defendant’s alleged first wife was in the courtroom and would have testified if necessary as to their marriage and includes an affidavit from his “first wife” in which she states that she and the defendant were “married in 1987,” “are still married” and live in New Jersey and “have six children together, ages 27-7.”
The defendant also provides to the court a sworn affidavit of the plaintiff from the Family Court proceeding, dated June 9, 2015, in which the plaintiff states, “Respondent and I were engaged in a relationship, during which Respondent led me to believe that he was in midst of a divorce proceeding, and that until the divorce was finalized, we were only able to be married by a religious institution and not by the State.” (Emphasis added.) When confronted by the defendant’s evidence of this sworn affidavit from the Richmond County Family Court proceedings by the court during oral argument, her attorney’s response regarding her client’s position was “[the plaintiff] says that was a mistake. That her lawyer put it in there.”
The court is concerned by the allegations set forth by the defendant, most significantly that of plaintiff potentially forum *1153 shopping and attempting to utilize the Supreme Court to redress the rulings of the Family Court and the position taken by the Attorney for the Child in Family Court. The plaintiff’s position in this matter is that she was wholly unaware of the defendant’s prior marriage and that she believed the couple were married up until hearing from the defendant’s wife after the 2014 ceremony. Even if the court were to find said claim credible, under the doctrine of judicial estoppel the plaintiff is estopped from making this argument. Plaintiff is judicially estopped from taking an adverse or inconsistent position on this issue simply because her interests have changed (see Karasik v Bird, 104 AD2d 758 [1st Dept 1984]; see also Anonymous v Anonymous, 137 AD2d 739 [2d Dept 1988]; Tilles Inv. Co. v Town of Oyster Bay, 207 AD2d 393 [2d Dept 1994]). Judicial estoppel is intended to avoid abuse of the judicial system by preventing a party from obtaining a benefit by taking one position and then asserting a contrary position in the same, or a subsequent proceeding (see D & L Holdings v Goldman Co., 287 AD2d 65 [2d Dept 2001]; see also Maas v Cornell Univ., 253 AD2d 1 [3d Dept 1999]). The plaintiff, in a sworn affidavit, admitted she knew the parties could not be legally married and that she was aware of the defendant’s prior marriage. This position taken by the plaintiff in the Family Court proceeding is wholly contrary to that which she purports in the case at bar.[10] As such, the court finds that the plaintiff is judicially estopped from arguing she was unaware of the de *1154 fendant’s prior marriage and as such did not have a “justified expectation” that their 2014 marriage was valid. If the court were to allow the plaintiff to essentially change her story, despite her prior inconsistent statement, it would open the door to a cascade of matrimonial cases, especially those that are consolidated from family court, where prior sworn documents and hearings are rendered moot.
Therefore, based upon the court’s finding that the parties did not have a “justified expectation” that they were married and in turn did not get legally married, the court denies plaintiff’s motion to stay and consolidate the Richmond County Family Court action based upon the lack of subject matter jurisdiction. As such the court’s inquiry in this matter is concluded and does not need to analyze whether the alleged marriage was void or whether the plaintiff is entitled to economic relief.
The fact remains that the parties have been litigating this matter in Richmond County Family Court for over a year, the subject child has been appointed an attorney, the assigned referee is wholly familiar with the facts and circumstances of this case and has issued a number of orders currently in effect. Both the defendant and the Attorney for the Child oppose the consolidation. It is clear from both the submissions and both the ex parte applications and the argument on the record on June 24, 2016 of the instant order to show cause that the plaintiff is seeking redress for the decision and order issued in Family Court and using this court in an attempt at forum shopping based upon her admitted dissatisfaction with the Family Court proceeding and the position taken by the Attorney for the Child. The court notes that it generally favors consolidation of family court actions for judicial efficiency, but it cannot operate as an appellate court by allowing the plaintiff another bite at the apple with a new Attorney for the Child in a new county, especially where the plaintiff is judicially estopped from proceeding with this divorce action.
The relief requested by the plaintiff herein is denied for the reasons stated herein. The Family Court matter shall continue and as a result of this court’s decision, the action is dismissed *1155 based upon the doctrine of judicial estoppel. The defendant asserts it was never his intention to have a recognizable marriage under New York law, and the plaintiff, based upon her statements in Family Court is judicially estopped from taking a contrary position. Under New York law, without obtaining a marriage license, both parties need to have a “justified expectation” that as a result of the ceremony they were actually married. Clearly the defendant did not as he was previously married to another individual with whom he has six children and by plaintiff’s own admission in Family Court plaintiff knew he was married and not divorced as well.

. Originally appointed in Family Court, Richmond County. For purposes of this application the court will appoint Ms. Scotto as the Attorney for the Child, pursuant to part 36 of the Rules of the Chief Judge (22 NYCRR), nunc pro tunc.

. Under the Domestic Relations Law, a marriage is absolutely void if contracted by a person whose husband or wife by a former marriage, including a valid common-law marriage, is living, unless, generally speaking, such former marriage has been annulled or dissolved. Such a marriage is void even though no judgment declaring its invalidity is ever entered. Most notably on the topic of void marriages in New York, the Court of Appeals has held “the law of this State denounces as void a marriage by a person whose husband or wife by a former marriage is living.” (Landsman v Landsman, 302 NY 45, 48 [1950]; see Domestic Relations Law § 6; see also Lipschutz v Kiderman, 76 AD3d 178 [2d Dept 2010].)

. Plaintiffs counsel annexes a certificate of nikah granted by the TriState Islamic Center signed by two witnesses dated October 4, 2014 which includes the names of the plaintiff (bride) and defendant (groom) as exhibit 8 to motion sequence No. 1.

. The translated marriage certificate indicates that the defendant’s alleged marriage was June 24, 1987, and took place in the Jerusalem Court.

. The defendant contends that the plaintiff had told him she was using birth control.

. The plaintiff was arrested in June 2015 and charged with (1) making a punishable false written statement and (2) falsely reporting.

. The defendant’s sister submitted an affidavit dated June 15, 2016. His sister contends that the plaintiff is lying about not knowing that the defendant was married before October 4, 2014. She contends that she spoke with the plaintiff in or about March 2014, in an effort for the plaintiff to discontinue her relationship with the defendant since he was a married man with a wife and six children. The manager of the restaurant owned by the defendant also submitted an affidavit dated June 14, 2016 in which she alleges that the plaintiff was aware that the defendant was married before October 4, 2014. She contends that she and the plaintiff had many conversations regarding the plaintiff’s marriage, wife, and children. The store manager avers that the plaintiff has called the restaurant, even before the plaintiff was pregnant, in order to inquire whether the defendant’s wife had come by or called the restaurant.

. With reference to the affidavit dated June 9, 2015, counsel for the plaintiff contends that the affidavit was incorrect as to this point and her previous counsel was mistaken. With reference to the August 2015 text messages, counsel contends that the text messages were sent after she discovered that the defendant had an alleged wife. The plaintiff avers that she did know that her sister believed that the defendant was married and was not told that her sister was emailing the defendant in 2014.

. The plaintiff contends that she erred in her previous affidavit on this point.

. The facts of this case can be distinguished from those in the recent Appellate Division, Second Department case of Canzona v Canzona (142 AD3d 1030 [2d Dept 2016]). The relevant facts from Canzona are as follows: The plaintiff in a later matrimonial action argued that the defendant was judicially estopped from seeking an award of maintenance because she previously filed two separate bankruptcy petitions which alleged in part, that she was not entitled to any alimony, maintenance or support payments. The Appellate Division, Second Department held that the
“defendant was not judicially estopped from seeking . . . maintenance [because] the parties were still married at the time the bankruptcy petitions were filed, and the defendant was not required to list any possible future rights to maintenance payments in the bankruptcy petitions, which were filed years before the judgment of divorce was issued.” (Id. at 1031.)
In the case at bar, a matrimonial action commenced by the plaintiff, the prior proceeding in which the plaintiff made a contrary sworn statement was a family court custody proceeding. While the plaintiff was not required to comment on the validity of the parties’ marriage in the Family Court proceeding, her admission relating to the validity of the parties’ marriage was certainly within the scope of the custody proceeding as to determining the child’s pedigree. While an individual may not be judicially estopped from making a *1154 statement regarding maintenance in a bankruptcy petition as it relates to a later matrimonial matter, this court believes that an individual that makes an admission in a family court custody matter (that she commenced) is not prejudiced if she is then judicially estopped from taking a contrary position in a related matrimonial matter where she seeks to consolidate the family court proceedings into supreme court.