■ In the Matter of HARRY REBELL, Respondent, v ADA T. TRASK et al., Appellants, and WILLIAM KASENETZ, Respondent.

[632 NYS2d 624] —In a proceeding for the judicial settlement of a trustee's account, Ada Turkish Trask, Arthur Turkish, and Mitchell M. Gans appeal (1) from an order of the Surrogate's Court, Nassau County (Radigan, S.), dated November 2, 1994, which, *inter alia*, (a) granted the petitioner's motion for partial summary judgment vacating a settlement agreement between the petitioner and Ada Turkish Trask, the trust beneficiary, and (b) denied their cross motion for summary judgment determining that the settlement agreement is valid and that the petitioner is not entitled to receive any payment in excess of the $80,000 set forth therein, and (2) as limited by their brief, from so much of an order of the same court, dated March 2, 1995, as denied that branch of a motion by Ada Turkish Trask which was denominated as being for reargument and renewal but which was, in actuality, for reargument.

Ordered that the appeal from so much of the order dated March 2, 1995, as denied that branch of the motion by Ada Turkish Trask which was for reargument is dismissed, as no appeal lies from an order denying reargument; and it is further,

Ordered that the order dated November 2, 1994, is reversed, on the law, the petitioner's motion for partial summary judgment is denied, and the cross motion for summary judgment determining that the settlement agreement is valid and that the petitioner is not entitled to receive any payment in excess of the $80,000 set forth therein is granted; and it is further,

Ordered that the appellants are awarded one bill of costs.

The petitioner Harry Rebell is the only surviving trustee of a trust established for the benefit of the appellant Ada Turkish Trask. It is undisputed that pursuant to its terms, the trust terminated upon the death of another trustee, Samuel Cohen, in 1985. However, when Rebell and former co-trustee William Kasenetz sought to render an accounting, Trask objected and alleged that the trustees had breached their fiduciary duties. Following extensive litigation, Rebell and the appellants entered into a settlement agreement in May 1988. The agreement provided, *inter alia*, that Rebell would receive the sum of $80,000 from the trust in full satisfaction of his claims for commissions and legal fees, whereupon the parties would execute general releases in favor of each other. The agreement also required Rebell to "take all necessary and appropriate action to see that all the proceeds remaining on hand in the * * * trust, after payment to him of the [$80,000] * * * are distributed as soon as is reasonably possible to * * * Trask". Closing of the agreement could be adjourned "for such additional time

as may be necessary to cause the Trustees [i.e., Rebell and Kasenetz] to issue a check for $80,000 to Rebell, provided further that Trask agrees to take all necessary and appropriate action to cause the Trustees to make the said payment to Rebell".

Disputes subsequently erupted among Rebell, Kasenetz, and Trask, and Kasenetz allegedly refused to consent to release the proceeds of the trust to Trask. Rebell then commenced a proceeding to resign as trustee and to require payment of the $80,000 settlement sum to him. The Supreme Court, Nassau County (Collins, J.), ultimately granted Rebell's request on the condition, *inter alia*, that he render a final account reflecting the distribution to Trask of all trust proceeds, less the $80,000 payable to Rebell. Rebell subsequently moved for renewal, contending that he was unable to render a final account or distribute the trust proceeds to Trask because Kasenetz would not consent thereto. The application was dismissed on procedural grounds.

Additional trust-related litigation ensued between the parties. Rebell then commenced the instant proceeding for a voluntary accounting and to set aside the 1988 settlement agreement so that he could pursue a claim for fees and commissions in excess of $80,000. He thereafter moved for partial summary judgment vacating the settlement agreement, contending that the purpose of the agreement had been frustrated by the refusal of Kasenetz to consent to the distribution of the trust proceeds to Trask and that Trask had breached her obligations under the agreement by refusing to consent to the payment of the $80,000 sum set forth in the agreement. Trask, Arthur Turkish (her son), and Mitchell M. Gans (an attorney) cross-moved for summary judgment determining that the settlement agreement was valid and that Rebell's payment was thereby limited to $80,000.

The Surrogate granted Rebell's motion and denied the cross motion, finding that under the terms of the settlement agreement, Rebell was entitled to payment of the $80,000 sum before any distribution of the trust proceeds to Trask occurred, that Trask had breached the agreement by refusing to approve the payment, and that Rebell was therefore entitled to have the agreement set aside and to seek recovery of all fees and commissions as if the settlement agreement had never existed. We now reverse.

"Stipulations of settlement are essentially contracts and will be construed in accordance with contract principles and the parties' intent" (*Serna v Pergament Distribs.*, 182 AD2d 985, 986). Hence, when an agreement between parties is clear and

unambiguous on its face, it will be enforced according to its terms and without resort to extrinsic evidence (*see, W.W.W. Assocs. v Giancontieri*, 77 NY2d 157). In the instant case, the Surrogate erred in determining that the agreement required payment of $80,000 to Rebell before the corpus of the trust could be turned over to Trask. While Paragraph 6 of the document does refer to the payment to Trask of the remaining trust proceeds "after payment to [Rebell] of the [$80,000]", this phrase does not refer to the time sequence of payment. Rather, it refers to the amount of money to be paid over to Trask (i.e., the entire proceeds of the trust after the $80,000 payable to Rebell is deducted). Indeed, upon consideration of the entire agreement (*see, Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 84 NY2d 430; *Rentways, Inc. v O'Neill Milk & Cream Co.*, 308 NY 342), it is clear that it contemplates a formal closing at which the parties would simultaneously render performance to each other—Trask would receive the corpus of the trust less the $80,000 sum to be paid to Rebell.

Since the settlement agreement required simultaneous performance, Trask did not breach the agreement by refusing to approve payment of the $80,000 sum to Rebell until such time as Rebell was ready, willing, and able to pay over the trust proceeds to her. Accordingly, Rebell was not entitled to be relieved of his obligations under the agreement or to seek recovery for breach of contract on this basis.

Furthermore, Rebell failed to establish any ground for setting aside the settlement agreement. As the Court of Appeals recently observed,

"[s]trong policy considerations favor the enforcement of settlement agreements (*see, Hallock v State of New York*, 64 NY2d 224, 230). A negotiated compromise of a dispute avoids potentially costly, time-consuming litigation and preserves scarce judicial resources; courts could not function if every dispute devolved into a lawsuit. Moreover, there is a societal benefit in recognizing the autonomy of parties to shape their own solution to a controversy rather than having one judicially imposed. Additionally, a settlement produces finality and repose upon which people can order their affairs.

"These interests are advanced only if settlements are routinely enforced rather than becoming gateways to litigation" (*Denburg v Parker Chapin Flattau & Klimpl*, 82 NY2d 375, 383). In view of these strong policy considerations, settlement agreements may only be set aside on relatively narrow grounds. Hence, "[o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or ac-

cident, will a party be relieved from the consequences of a stipulation [of settlement] made during litigation" (*Hallock v State of New York*, 64 NY2d 224, 230, *supra*; *see, Serna v Pergament Distribs.*, 182 AD2d 985, *supra*). We find unpersuasive Rebell's contention that the settlement agreement should be set aside because its purpose was frustrated by circumstances beyond his control. While the doctrine of frustration of purpose may constitute a valid ground for vacating a settlement (*see, Central Val. Concrete Corp. v Montgomery Ward & Co.*, 34 AD2d 860; *Monasebian v Du Bois*, 30 AD2d 839), that doctrine is not available where the event which prevented performance was foreseeable and provision could have been made for its occurrence (*see, 407 E. 61st Garage v Savoy Fifth Ave. Corp.*, 23 NY2d 275, 282; *Fifth Ave. of Long Is. Realty Assocs. v KMO-361 Realty Assocs.*, 211 AD2d 695, 696; *Beagle v Parillo*, 116 AD2d 856, 857; *Frenchman & Sweet v Philco Discount Corp.*, 21 AD2d 180, 182). The principal purposes of the settlement agreement in this case were to settle the prior litigation between Rebell and Trask, to permit Rebell to resign as trustee with compensation in the amount of $80,000, and to procure the distribution of the trust proceeds to Trask. Although Rebell contends that these purposes were frustrated by the refusal of former co-trustee Kasenetz to approve the distribution to Trask, such refusal cannot genuinely be characterized as unforeseeable or unanticipated given the history of litigation which involved the parties and Kasenetz. Additionally, while the parties to the agreement were aware that the consent of Kasenetz would have to be obtained in order to effectuate the trust distribution, they simply failed to make any provision specifically addressing the very real possibility that his consent would be withheld.

Moreover, Rebell never commenced legal proceedings to compel Kasenetz to approve the trust distribution, notwithstanding his obligation under the agreement to "take all necessary and appropriate action" to procure the distribution "as soon as is reasonably possible". In any event, the parties have advised this Court that Kasenetz died during the pendency of this appeal; hence, his alleged lack of consent no longer poses an impediment to the distribution of the trust proceeds.

Accordingly, Rebell's motion for partial summary judgment to set aside the agreement must be denied, and the cross motion of the appellants for summary judgment determining that the agreement is valid and that Rebell's remuneration is limited thereby is granted.

In view of the foregoing discussion, we need not reach the alternative contentions raised by the appellants.

Finally, the appeal from that portion of the order dated March 2, 1995, which denied Trask's application to "renew and reargue" must be dismissed. The application was actually one for reargument, since it was not based upon new facts unavailable at the time of the original motion, and the denial of reargument is not appealable (*see, e.g., Matthews v New York City Hous. Auth.*, 210 AD2d 205; *Huttner v McDaid*, 151 AD2d 547). Bracken, J. P., Sullivan, Friedmann and Krausman, JJ., concur.