[892 NYS2d 311]

Tracy Altman Warner et al., Appellants, v Kenneth F. Kaplan et al., Respondents, et al., Defendant.

First Department, December 10, 2009

**APPEARANCES OF COUNSEL**

*Richard A. Kraslow, P.C.*, Melville (*Richard A. Kraslow* of counsel), for appellants.

*Victor & Bernstein, P.C.*, New York City (*Donald M. Bernstein* of counsel), for respondents.

**OPINION OF THE COURT**

SAXE, J.

This appeal concerns which party is entitled to the contract deposit placed in escrow pursuant to a contract of sale for a co-op apartment, when the purchaser dies after the sale is approved by the co-op's board of directors but before closing.

On May 11, 2005, defendants Kenneth F. Kaplan and Diane K. Kaplan, as sellers, and Glen Altman, as purchaser, entered into a contract for the sale of cooperative apartment 2A at 1150 Park Avenue in Manhattan, for the purchase price of $2.3 million in cash; a deposit of $230,000 was placed in escrow. As required by the contract, on July 27, 2005, Altman submitted her application to the co-op's board of directors for approval of

4

the sale. On August 11, 2005, she was interviewed by the board of directors, and the board approved the sale on August 18, 2005.

While plaintiffs assert that Altman did not receive notification of the board's approval before she died, a broker for the co-op's managing agent stated that she informed Altman of the approval, and that on August 22, 2005, at Altman's request, Altman and her stepdaughter went to the subject apartment to consider whether Altman should purchase any of the sellers' personal property. On September 1, 2005, Altman died after suffering a stroke.

In a letter dated September 28, 2005, plaintiffs Tracy Altman Warner and Alan G. Kraut, coexecutors of Glen Altman's estate, demanded that the sellers return the contract deposit of $230,000; the sellers took the position that the contract remained binding upon Altman's heirs, and if Altman's estate refused to close, it would be in default.

This action for return of the contract deposit followed, and, at the close of discovery, defendants moved for summary judgment dismissing the complaint. The motion was granted. We affirm that determination.

The crux of this matter lies in contract paragraph 15.2, which expressly makes the contract binding on the parties' "heirs, personal and legal representatives and successors in interest." The inclusion of this provision indicates that the parties explicitly contemplated, and provided for, the possibility of either party's death before closing, by specifying that the death would not terminate the contract, but that the contract would survive, to be performed by the successors or heirs of the deceased party. This provision makes the contract binding on Altman's estate.

While a contract for personal services is terminated by the death of the servant (see *Minevitch v Puleo*, 9 AD2d 285, 287 [1959]), a contract of sale is not terminated by the death of the purchaser. On the contrary, as a general rule,

> "[w]here the proposed purchaser dies before the closing of title, his executor or administrator may pay the balance of the purchase price and take the deed in his own name holding it in trust for the heirs at law or devisees. It is the duty of the fiduciary for a deceased vendee to complete payments under a contract entered into by such vendee for

the purchase of real property" (4-35 Warren's Weed New York Real Property § 35.24 [1] [2009] [footnote omitted]; *see Di Scipio v Sullivan*, 30 AD3d 660 [2006]).

We reject plaintiffs' suggestion that paragraph 1.17, the "Proposed Occupants" provision of the form contract, which was left blank in this instance, somehow negates paragraph 15.2. The purpose of the provision is merely to allow the purchaser to indicate which, if any, other individuals will be residing in the apartment with her. Whether filled in or left blank, the provision does not invalidate or limit the provision binding the parties' heirs to their predecessors' contractual obligations. Even if Altman had listed proposed occupants, upon her death, the legal issues presented would remain the same, and their resolution would still depend on whether her heirs were contractually obligated to purchase the apartment, regardless of whether the board had approved the proposed occupants.

Indeed, paragraph 15.2 would be meaningless if it did not bind the purchaser's estate to her contractual obligation to purchase the apartment, and "a contract should not be interpreted so as to render any clause meaningless" (*RM 14 FK Corp. v Bank One Trust Co., N.A.*, 37 AD3d 272, 274 [2007]). That the provision is a standard clause in a form contract renders it no less enforceable; the clause is clear and unambiguous, and if it inaccurately reflected the parties' intentions, it could have been rewritten (*see Slamow v Del Col*, 79 NY2d 1016, 1018 [1992]).

We also reject plaintiffs' contention that Altman's death before closing justifies nonperformance under the defense of either impossibility or frustration of contract.

■ "Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible. Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract" (*Kel Kim Corp. v Central Mkts.*, 70 NY2d 900, 902 [1987]). Paragraph 15.2 of the contract conclusively disproves the theory's applicability here. Plaintiffs rely on a case in which the very subject matter of the contract was destroyed, making performance impossible (*see Stewart v Stone*, 127 NY 500 [1891]). However, where performance is possible, albeit unprofitable, the legal excuse of impossibility is not available (*see 407 E. 61st Garage v Savoy Fifth Ave. Corp.*, 23

NY2d 275, 282 [1968]). The other cases plaintiffs rely on for application of the impossibility defense are also not on point.

Similarly, although at first blush the general definition of "frustration of contract purpose" would seem to suit these circumstances, closer examination reveals that the defense cannot be applied here. "In order to invoke the doctrine of frustration of purpose, the frustrated purpose must be so completely the basis of the contract that, as both parties understood, without it, the transaction would have made little sense" (22A NY Jur 2d, Contracts § 375). Since it is agreed that Altman was purchasing the apartment solely for her own residence, her death would, by this definition, frustrate the purpose of the contract. However, "the doctrine of frustration of purpose . . . is not available where the event which prevented performance was foreseeable and provision could have been made for its occurrence" (*Matter of Rebell v Trask*, 220 AD2d 594, 598 [1995], citing *407 E. 61st Garage*, 23 NY2d at 282). Since the contract actually made explicit provision for the event of either party's death, the doctrine is not available here.

Plaintiffs challenge the contract on the additional ground that the contract contingency was not satisfied because Altman did not receive notification of approval before she died. However, plaintiffs have no grounds on which to deny the board's issuance of written approval, and they fail to offer specific facts contradicting the broker's affidavit stating that Altman was informed and, in fact, thereafter took her stepdaughter to the apartment with her to consider whether to purchase any of the personal property in it. The bare assertion that Altman did not receive the notice of approval, without specific facts in support, is insufficient to avoid the estate's contractual obligations.

Plaintiffs also contend that Altman had already satisfied the contract's requirement that the purchaser submit an application for the board's approval of the sale, and since there is no provision in the contract that imposes on the purchaser's estate or heirs an affirmative obligation to submit a further application for the board's approval, their failure to do so cannot be treated as a repudiation of the contract. The question therefore becomes whether paragraph 6, or any other contract provision, imposed any further obligation regarding board approval, either on Altman's estate or on the sellers, following Altman's death.

Paragraph 6.1 declares that "[t]his sale is subject to the approval of the Corporation," and paragraph R25 of the supplemental rider to the contract makes the contract contin-

gent on the board's approval of the transaction. Notwithstanding Altman's compliance with contract subparagraph 6.2.1, which specifies the steps required of the purchaser to apply for the board's approval, once Altman's death made the contract of sale binding on her estate, the board's initial approval of Altman as buyer and as occupant no longer sufficed to satisfy paragraphs 6.1 and R25. The board had not authorized either the sale to Altman's estate or residency in the unit by an occupant selected by the estate. So, since the estate was bound by the obligation to purchase the apartment, the estate had to obtain the board's approval.

Once it is accepted that the contract remained binding following Altman's death, and that the board's approval was required to be obtained anew, it necessarily follows that Altman's estate was required to take the steps necessary to obtain the board's approval. This is so because only the purchaser has the information needed by the board to determine whether a purchase should be approved. Plaintiffs may not rely on an asserted belief, based on general knowledge, that the board would not have approved the estate as purchaser. In fact, the evidence establishes that the cooperative did not have a policy in place that would have precluded a transfer to the estate. Nor is it relevant that the board declined to provide advance assurances of approval in response to the sellers' informal inquiry. Unless and until a purchaser provides the board with the necessary application for approval of a transaction, the board has neither the obligation nor the ability to determine whether the proposed sale should be approved. Indeed, because plaintiffs failed to seek board approval of the sale to the estate, we need not rule on the estate's right to reimbursement of the contract deposit in the event the board disapproved the sale.

The estate's failure to pursue any application to the board, along with its declaration that it would not perform under the contract of sale and its letter demanding the return of the contract deposit of $230,000 from the sellers—in the face of the sellers' demand that the estate proceed to closing—together establish a repudiation of the contract by the estate, entitling the sellers under the clear terms of the contract to the liquidated damages of the contract deposit (*see Norcon Power Partners v Niagara Mohawk Power Corp.*, 92 NY2d 458, 462-463 [1998]; *Stadtmauer v Brel Assoc. IV*, 270 AD2d 59, 60 [2000]).

Accordingly, the order of the Supreme Court, New York County (Barbara R. Kapnick, J.), entered November 6, 2008,

which granted defendants' motion for summary judgment dismissing the complaint, should be affirmed, without costs.

GONZALEZ, P.J., McGUIRE, ACOSTA and ROMAN, JJ., concur.

Order, Supreme Court, New York County, entered November 6, 2008, affirmed, without costs.