Matter of Fein v Langer (2024 NY Slip Op 04906)

Matter of Fein v Langer

2024 NY Slip Op 04906

Decided on October 08, 2024

Appellate Division, First Department

OING, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 08, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber
Jeffrey K. Oing Julio Rodriguez III John R. Higgitt Marsha D. Michael

Index No. 651198/23 Appeal No. 2198-2201 Case No. 2023-01660, 2023-03490, 2023-03491, 2023-03492 

[*1]In the Matter of Ariel Fein et al., Petitioners-Respondents,
v
Irving Langer, Respondent-Appellant.

Plaintiff appeals from three orders of Supreme Court, New York County (Jennifer G. Schecter, J.), entered on or about March 13, June 22, and July 13, 2023, which, to the extent appealed from as limited by the briefs, respectively, granted the motion of petitioners Ariel Fein, Sarah Kruger, Alan Fein, and ASMSY, LLC for a preliminary injunction and directed respondent Irving Langer to take all steps necessary to stay an action in the Superior Court of the State of Arizona; granted the petition to compel respondent to arbitrate his claims against petitioners pursuant CPLR 7502(a); designated a substitute arbitrator; and denied respondent's motion for leave to reargue and renew his opposition to the aforesaid motion and petition.

Shlansky Law Group, LLP, New York (David J. Shlansky of counsel), for appellant.
Frankel, Rubin, Klein, Payne & Pudlowski, P.C., Brooklyn (Michael Dachs and Mayer S. Klein of counsel), and The Feinsilver Law Group, P.C., Brooklyn (H. Jonathan Rubinstein of counsel), for respondents.

OING, J.

This appeal asks us to determine the propriety of the preliminary injunction imposed on respondent enjoining him from pursuing the claims he interposed in an Arizona state court action and directing him to proceed to arbitration. The facts and procedural history underpinning this dispute brings to mind the old proverb, "Be careful what you wish for."
This dispute had its genesis sometime in 2016 when petitioner Ariel Fein approached respondent Irving Langer and successfully convinced him to invest $7.9 million in Fein's venture to operate skilled nursing facilities in Arizona and elsewhere. On September 22, 2016, Fein, Langer, and two related entities, Allegiant Holding, LLC, and Allegiant Holding B, LLC, entered into an operating agreement forming Allegiant Realty, LLC, an Arizona limited liability company, to acquire, own, and lease real estate to be used for nursing homes.[FN1] Langer's investment was used to fund Allegiant Realty's acquisition of several nursing home properties and facilities in Arizona.[FN2] Fein and Langer are the managers of Allegiant Realty. On that same day, Fein and Langer together with Eliot Berger and Jake Weintraub entered into an operating agreement forming Allegiant Holding C, LLC, another Arizona limited liability company, whose essential purpose is to operate skilled nursing facilities. Each individual held a 25% interest in Allegiant Holding C, with Berger and Weintraub as the managing members. Allegiant Holding C leased from Allegiant Realty four skilled nursing facilities and operated them through its operating entities.[FN3]
Allegiant Realty's and Allegiant Holding C's operating agreements contained identical arbitration provisions providing, in pertinent part:
"10.4 Dispute Resolution. The parties hereto agree that with respect to all disputes, problems or claims arising out of or in connection with this Agreement and all other agreements or other instruments executed in connection herewith (the "Dispute[*2]"), the parties hereto shall, in good faith, use their reasonable best efforts to resolve the Dispute. If after such efforts the parties hereto are unable to agree upon a resolution . . . either party may submit to final and binding arbitration before Rabbi Eytan Feiner of Congregation Kneseth Israel in Rockway, New York (the "Beth Din"). Either party may commence the arbitration process . . . by filing a written demand for judgment with the Beth Din. The provisions of this section . . . with respect to judgment before the Beth Din may be enforced by any court of competent jurisdiction, and the parties seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys' fees, to be paid by the parties against whom enforcement is ordered. . . . Upon mutual agreement of the parties involved in the Dispute, the parties may submit to final and binding arbitration before any other recognized alternative dispute resolution company or organization. The parties hereto agree that this paragraph shall be grounds for dismissal of any court action commenced by any party with respect to a dispute arising out of such matters."
The operating agreements also contained identical forum selection clauses providing, in relevant part:
"10.6 Jurisdiction; Venue. EXCEPT AS PROVIDED OTHERWISE IN THIS AGREEMENT, IN THE EVENT ANY DISPUTE BETWEEN THE PARTIES HERETO RESULTS IN LITIGATION, OR TO THE EXTENT A PARTY MUST GO TO A COURT OF LAW TO ENFORCE A JUDGMENT ARRIVED AT THROUGH ARBITRATION PURSUANT TO SECTION 10.4 OF THIS AGREEMENT, ALL SUCH ACTIONS OR PROCEEDINGS IN ANY WAY, MANNER OR RESPECT ARISING OUT OF OR FROM OR RELATED TO THIS AGREEMENT, THE OTHER DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREIN SHALL BE LITIGATED IN COURTS HAVING SITUS IN THE CITY OF PHOENIX, STATE OF ARIZONA. EACH OF THE PARTIES HERETO HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURTS LOCATED WITHIN SAID CITY AND STATE. . . . ."
Thus, both operating agreements provide for two forms of dispute resolution: with the Beth Din of America by default, or with a recognized ADR organization upon mutual agreement. Further, under these agreements, enforcement of the Beth Din judgment may be in "any court of competent jurisdiction," while non-Beth Din arbitration judgments shall be enforced in the Arizona federal or state courts.
Also, section 10.14 of both agreements has virtually identical language concerning amendments, which provides that "[t]his Agreement may be amended, altered or modified only by the affirmative vote of the Majority-In-Interest of the Members." Relevant to this appeal, "Majority-In-Interest" is defined in the 2016 Allegiant Holding C operating agreement as members holding 75% or more of the company.
On March 21, 2017, a "majority-in-interest" of Allegiant Holding C's members — Fein, Berger, and Weintraub — executed and adopted the "Allegiant Holding C, LLC Limited Liability Company Agreement," purportedly a [*3]new operating agreement for Allegiant Holding C.[FN4] Langer did not sign this 2017 agreement. Under this agreement, Fein became managing member, replacing Berger and Weintraub. Unlike the 2016 Allegiant Holding C Operating Agreement, the 2017 agreement did not have an arbitration dispute resolution provision. Instead, it only had a New York forum selection clause providing:
"Section 11.3 Jurisdiction and Venue
Any process against any Member in, or in connection with, any suit, action or proceeding arising out of or relating to this Agreement or any Member's performance hereof may be served personally or, to the extent permitted by law, by certified mail at that Member's address for receipt of notices hereunder with the same effect as though served on such Member personally. Each Member hereby irrevocably submits in any suit, action or proceeding arising out of or relating to this Agreement or any Member's performance hereof of rights or obligations hereunder to the jurisdiction of the federal and state courts sitting in New York and waives any and all objections to the jurisdiction of, or venue in, such courts that such Member may have under applicable laws."
On September 18, 2020, Berger and Allegiant Holding B commenced an action in the Arizona state court (Berger Arizona action), against Fein, Langer, Allegiant Realty, Allegiant Holding C, Allegiant Holding, and other entities affiliated with the nursing home enterprise (Berger Arizona action defendants). Berger's action complained of breaches of Allegiant Realty's and Allegiant Holding C's operating agreements and related common-law duties, and asserted claims against the Berger Arizona action defendants for conversion, fraudulent conveyances, and unjust enrichment. Essentially, the alleged misconduct perpetrated by defendants centered on the ownership and management of Allegiant's nursing home enterprise. Berger also sought inspection of records, accounting, and declaratory judgment in connection with the operating agreements.
After Berger refused the Berger Arizona action defendants' demand for arbitration, they commenced a special proceeding in New York Supreme Court to enjoin Berger from continuing to prosecute the Berger Arizona action and to compel him to arbitrate his claims (Berger Special Proceeding) (see Fein v Berger, 2020 NY Slip Op 34148[U] [Sup Ct, NY County 2020). Defendants, which included Langer individually and his affiliated entities, maintained that jurisdiction in New York was proper under the three operating agreements, and asserted that the broad arbitration provision of the 2016 Allegiant Realty Operating Agreement reached the claims interposed in the Berger Arizona action. Berger argued otherwise, and specifically challenged the validity of the 2017 Allegiant Holding C LLC Agreement.
Supreme Court found that the Berger Arizona action defendants' clear demand for arbitration triggered their right to commence a proceeding in New York to compel arbitration of the Berger [*4]Arizona action claims. Supreme Court then held that under the terms of the two 2016 operating agreements, once a party seeks to pursue arbitration before the Beth Din, as the Berger Arizona action defendants did, arbitration before the Beth Din was mandatory and not merely permissive, noting that resort to other arbitral fora requires mutual agreement. Supreme Court also rejected Berger's argument that he could maintain his Arizona action, which relied on the operating agreements' section 10.6 Arizona forum selection. The court held that those clauses did not conflict with section 10.4's dispute resolution provision because they carved out an exception for Beth Din arbitrations, which, pursuant to section 10.4, could be enforced in "any court of competent jurisdiction."
Concerning Berger's challenge to the validity of the 2017 Allegiant Holding C LLC Agreement, Supreme Court found that this agreement "appears to be the effective agreement with respect to that entity, notwithstanding the fact that Mr. Langer appears not to have signed" it because the 2016 Allegiant Holding C Operating Agreement "permits amendment [of it] by agreement of the majority of the members in interest [which occurred when Fein, Berger and Weintraub executed the agreement]." Given this uncertainty concerning the validity of the 2017 agreement, Supreme Court reasoned that an injunction could not be based on this agreement. In fact, the court found, "inasmuch as the 2017 [Allegiant Holding C LLC] Agreement is not executed in connection with the Realty Agreement, the only basis for issuing an injunction as to the 2017 [Allegiant Holding C LLC] Agreement would be a finding that the dispute under the 2017 [Allegiant Holding C LLC ] Agreement arises out of or in connection with the Realty Agreement and all other agreements or other instruments executed in connection therewith." Supreme Court then held that it could not resolve this issue on the record before it and that, in any event, the issue should be decided by the arbitrator. Thus, the validity of the 2017 Allegiant Holding C LLC Agreement was never resolved.
Nonetheless, in spite of this finding, Supreme Court ultimately ruled that a preliminary injunction was proper because Berger's reliance on the 2016 Allegiant Holding C Operating Agreement prevented him from objecting to having his claims submitted to the Beth Din, noting that the Berger litigants "cannot have their cake and eat it, too." Accordingly, Supreme Court granted the petition, staying Berger from litigating his claims in Arizona pending final determination as to whether he should be compelled to arbitrate his Arizona state court claims.
On March 25, 2021, the parties, including Langer, stipulated to dismiss the Berger Arizona action with prejudice and to have Berger submit his claims to arbitration under the Beth Din before a panel of three arbitrators in place of Rabbi Feiner, who was designated as the arbitrator in the relevant operating agreements. On October [*5]29, 2021, the parties entered into a settlement agreement providing for money payment to Berger and Allegiant Holding B; the transfer of Berger's rights and interests in the Allegiant entities to the Berger Arizona action defendants; and mutual releases. Langer signed the agreement, but limited his agreement and consent to several provisions of the settlement agreement, notably to section 14[t], which was a waiver of any attorney conflict that he may have had arising from counsel's representation of Fein, the Allegiant entities and himself in connection with the settlement agreement.[FN5]
Almost two years later, on February 14, 2023, Langer, like Berger, commenced an action in Arizona state court. That action named as defendants Fein; his spouse, Sarah Kruger; the couple's co-owned holding company ASMSY, LLC; his father, Alan Fein; Allegiant Holding C; and the four operating entities for the skilled nursing facilities, namely, Allegiant Healthcare West, LLC, Allegiant Healthcare East, LLC, Allegiant Healthcare IL, LLC, and Allegiant Healthcare AL, LLC. Langer sought damages arising out of Fein's alleged fraud and misconduct in the management and operation of Allegiant Holding C, which is the sole member of the operating entities. He asserted claims for breach of fiduciary duty, good faith, and unjust enrichment, and sought a statutory accounting based on Fein's alleged commingling of the Allegiant nursing enterprises' funds, self-dealings, and fraudulent transfers.
As in the Berger Arizona action, Fein sent a written demand to Langer to arbitrate his claims before the Beth Din. Langer's counsel responded that Langer objected, and requested an opportunity to set forth his reasons. Shortly thereafter, in response, Fein commenced the underlying special proceeding seeking to enjoin Langer from maintaining his Arizona action and to compel arbitration. In the verified petition, Fein asserted that Allegiant Realty's broad arbitration clause encompassed Langer's Allegiant Holding C claims. Fein then argued that Langer should be estopped from maintaining his action because arbitration was consistent with Langer's and the Berger Arizona action defendants' position in the Berger Special Proceeding. Langer contended otherwise and, as to the estoppel issue, essentially argued that Fein and his counsel falsely stated that they represented him.
Supreme Court rejected Langer's arguments as improper attempts to distance himself from the Berger Special Proceeding and instead agreed with Fein that Langer was judicially estopped from arguing that the court could not compel arbitration. In granting the petition, Supreme Court noted that:
"[t]his section [10.4 of the Allegiant Realty Operating Agreement] is to be broadly interpreted. How do I know that? Because Langer argued that in the Berger [special] proceeding. . . . Whether [Langer] chose to involve himself or not, that's his issue. The position he took in that case is, and he was a party, it went to arbitration based [*6]on that provision. And not just with him, he was aligned with every single petitioner in this [Berger special] proceeding. . . .
"And just like the other case, the Berger case which came out of Arizona had similar torts, fraud. I mean, it's the same — breach of fiduciary duty. It is no different here, not even a little. . . .
"But I don't see how, again, the broad dispute resolution provision in 10.4, and based on the parties' position in Berger, I don't see how you get around the fact that there is no way that Mr. Langer should be bringing actions in Arizona. It is clear based on any agreement that's operative that I look at. But most specifically, again, it's based on the breadth of section 10.4. The position taken in Berger in terms of arbitration with all of the parties to this proceeding to be clear, not even just Langer and Fein. There isn't a party in this action that wasn't also subject to Berger in terms of taking the position that arbitration was appropriate and the factual intertwining that was asserted there. And, you know, there is just no basis for Langer proceeding in Arizona whatsoever."
Supreme Court issued three subsequent orders. The first order designated Rabbi David Grossman in place of Rabbi Feiner, who was the designated arbitrator in the 2016 operating agreements, based on Langer's contention that Rabbi Feiner apparently declined his appointment. In that regard, the record indicates that in response to Langer's counsel's inquiry, which noted that Langer did not believe his claims were subject to arbitration, Rabbi Feiner indicated that he may not be able devote the necessary time to resolve the complex issues due to religious observances. Langer's counsel wrote two additional letters seeking confirmation as to whether Rabbi Feiner would preside over the arbitration. Rabbi Feiner did not respond. The second order awarded Fein and his co-petitioners attorneys' fees. The third order denied Langer's reargument and renewal motion, which sought consideration of Berger's settlement agreement. The third order noted, as is relevant to this appeal, that Langer's proffered excuse — namely, that he did not realize the import of the settlement agreement until after the court heard oral arguments on Fein's petition — was not "reasonable justification," particularly where timely relief was not sought. Langer filed a notice of appeal for all four orders.[FN6]
On appeal, Langer maintains that Supreme Court lacked authority to enjoin him from maintaining his Arizona action. He also argues that it erred in compelling him to arbitrate his claims under the 2016 Allegiant Realty Operating Agreement because his Arizona state claims exclusively arise out of the 2017 Allegiant Holding C LLC Agreement, which does not have a mandatory arbitration clause. Specifically, he raises the following issues before us: (i) Supreme Court lacked jurisdiction to enforce the 2016 Allegiant Realty Operating Agreement; (ii) Supreme Court lacked authority to enjoin [*7]his Arizona action; and (iii) Supreme Court improperly compelled arbitration. Subsumed within the third argument are the following contentions: (a) that the 2017 Allegiant Holding C LLC Agreement is the operative agreement and its forum selection clause supersedes the 2016 Allegiant Holding C Operating Agreement's arbitration provision; (b) Langer's Arizona claims do not arise out of or in connection with Allegiant Realty; (c) Allegiant Realty's arbitration clause does not apply to a dispute concerning other limited liability companies; (d) the issues involve matters implicating Arizona public policy and police powers; (e) the arbitration provision fails under the doctrine of frustration of purpose because the designated arbitrator declined his designation, warranting rescission of the Allegiant Realty's and Allegiant Holding C's 2016 operating agreements; and (f) the Berger Special Proceeding settlement agreement supersedes those two operating agreements.
The doctrine of judicial estoppel "precludes a party who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed" (see MPEG LA, LLC v Samsung Elecs. Co., Ltd., 166 AD3d 13, 21 [1st Dept 2018], lv denied 32 NY3d 912 [2018],quoting Wells Fargo Bank N.A. v Webster Bus. Credit Corp., 113 AD3d 513, 516 [1st Dept 2014], lv denied 23 NY3d 902 [2014]). The doctrine rests upon the principle that a litigant should not be permitted to play "fast and loose with the courts" by leading a court to find a fact one way and then contending in another judicial proceeding that the same fact should be found otherwise (Environmental Concern v Larchwood Constr. Corp., 101 AD2d 591, 593, 594 [2d Dept 1984] [internal quotations omitted]).
As an initial matter, we reject the contention that because Fein and his counsel committed fraud in stating that they represented Langer in the Berger litigations, Langer should not be judicially estopped. There is no record evidence supporting that contention. In fact, in the Berger Special Proceeding, Supreme Court made several references to Langer in its decision. If the representation was fraudulent, nothing in the record indicates that Langer timely made any objections known to the court. Further undermining his contention is section 14[t] of the settlement agreement in the Berger Special Proceeding, wherein Langer waived any conflicts he may have had concerning the Allegiant entities and Fein's counsel. His belated attempts to continue to challenge the representation in this appeal cannot be countenanced.[FN7]
Here, the Berger Special Proceeding did not result in a formal judgment. Ostensibly then, because Langer, Fein, and the Allegiant entities did not "secure" a formal grant of relief based on their position that Berger's Arizona state claims were subject to arbitration, the doctrine appears to be inapplicable (see Baje Realty Corp. [*8]v Cutler, 32 AD3d 307, 310 [1st Dept 2006]; Carr v Caputo, 114 AD3d 62, 71 [1st Dept 2013] [doctrine inapplicable where party did not "secure" favorable judgment on issues raised in a summary judgment motion]; Van Kipnis v Van Kipnis, 8 AD3d 94 [1st Dept 2004] [doctrine inapplicable where party never prevailed in any judicial proceeding based on positions incompatible with a new defense]). However, the absence of a formal judgment does not preclude the doctrine's application (see D & L Holdings, 287 AD2d 65, 71-72 [1st Dept 2001], lv denied 97 NY2d 611 [2002] ["This policy (to prevent abuses of the judicial system by which a party obtains a relief by maintaining one position, and later, in a different action, a contrary position) would not be served by limiting its application to cases where the legal position at issue was ruled upon in the context of a judgment"]). Critical to the application of this doctrine is that a party derive a benefit or prevail on its claim (see MPEG LA, LLC v Samsung Elecs. Co., Ltd., 166 AD3d at 21).
Berger's Special Proceeding ultimately resulted in a stipulation wherein Berger agreed to have his Arizona state claims arbitrated and to discontinue the Berger Special Proceeding thereby terminating the need for further proceedings to determine the arbitrability issue. Additionally, the parties subsequently entered into a settlement agreement that released all of Berger's claims, "known and unknown," against Langer, Fein, and the Allegiant entities. The stipulation and settlement agreement, taken together, amount to Langer, Fein, and the Allegiant entities effectively securing a "favorable judgment," particularly given that unlike a formal judgment, they are essentially appeal proof (see D & L Holdings, 287 AD2d at 72; cf. Carr v Caputo, 114 AD3d at 71; Van Kipnis v Van Kipnis, 8 AD3d at 94). Under these unique circumstances, Langer is estopped from arguing that his Arizona state claims are not subject to arbitration and that Supreme Court erred in granting the preliminary injunction and directing him to arbitrate his claims. Nonetheless, even if Langer were not estopped, Supreme Court did not err in its determinations.
The principle is well settled that to obtain a preliminary injunction the party seeking such relief must demonstrate likelihood of success on the merits, irreparable harm, and the balance of equities in his or her favor (see Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839, 840 [2005]). Petitioners have made the requisite showing for such relief. Thus, the success of Langer's rebuttal depends on his ability to persuade us that the 2016 Allegiant Realty Operating Agreement does not reach his claims, that the 2016 Allegiant Holding C Operating Agreement has been superseded by the 2017 Allegiant Holding C LLC, and that the latter agreement is dispositive of the arbitrability dispute. For the reasons that follow, we decline to accept Langer's arguments or adopt his reasoning.
As an initial matter, we [*9]reject Langer's argument that Supreme Court lacked the authority to enjoin him from continuing to prosecute his Arizona state action because such power is limited to in-state actions (CPLR 7503; see Curtis, Mallet-Prevost, Colt & Mosle v Garza-Morales, 308 AD2d 261, 263-264 [1st Dept 2003]). The questions that remain are whether the petition was properly brought before Supreme Court, and whether there is a valid arbitration provision.
Langer argues that the 2016 Allegiant Realty Operating Agreement does not provide the jurisdictional basis for Supreme Court to compel arbitration. Specifically, he contends that sections 10.4 and 10.6 merely set forth enforcement protocols for an arbitration judgment and do not provide for proceedings to compel arbitration, and that under section 10.6 Arizona state court is the proper forum to resolve disputes. He then argues that section 10.6's language providing for litigation to resolve disputes must be interpreted as including proceedings to compel arbitration and that, as such, the Arizona state court is proper forum for those proceedings. Although not argued, these arguments also extend to the 2016 Allegiant Holding C Operating Agreement because it has identical provisions. The argument is unavailing.
In order to resolve this issue, we must address the apparent conflict between sections 10.4 and 10.6. Section 10.6 provides that Arizona state court is the proper forum for the enforcement of an arbitration judgment, while section 10.4 permits such enforcement in "any court of competent jurisdiction." A close reading of both provisions demonstrates there is no conflict. Section 10.4 provides for two types of arbitration, one before the Beth Din and the other before a mutually agreed-upon alternative dispute resolution entity. Section 10.4 specifically provides that enforcement of a Beth Din arbitral judgment may be "enforced by any court of competent jurisdiction," but provides no enforcement mechanism for non-Beth Din arbitration judgments. For that enforcement, resort must be made to section 10.6, which mandates such enforcement in Arizona state court.
To be sure, sections 10.4 and 10.6 do not provide for a mechanism to compel arbitration. The argument, however, fails to recognize that under section 10.4, once a party triggers mandatory Beth Din arbitration by making a demand, the enforcement of an eventual Beth Din judgment may be brought in "any court of competent jurisdiction." Thus, after triggering Beth Din arbitration, Fein and the related entities provided themselves with the opportunity in the first instance to seek compulsory relief in any jurisdiction. They chose New York. Accordingly, the instant petition was properly commenced in Supreme Court. Had there been a non-Beth Din arbitration, then any compulsory proceeding would have to have been commenced in Arizona pursuant to section 10.6.
We turn to the merits of the arguments. Langer maintains that the 2016 Allegiant Realty Operating Agreement does [*10]not apply because his Arizona state claims against Fein are not based on misconduct arising out that agreement, but out of the 2017 Allegiant Holding C LLC Agreement. He also asserts that the 2016 Allegiant Realty Operating Agreement's arbitration clause does not reach disputes concerning the other limited liability companies — namely, the Allegiant Holding C's four nursing homes.
The argument is based on a misunderstanding of the complexity of the underlying Allegiant transactions. Allegiant Realty is the sole entity that holds all the real estate and nursing home facilities for the Allegiant enterprise. Allegiant Holding C leases the facilities from Allegiant Realty and operates them through its four operating entities, i.e., Allegiant Healthcare West, LLC, Allegiant Healthcare East, LLC, Allegiant Healthcare AL, LLC, and Allegiant Healthcare IL, LLC. Thus, Allegiant Realty is the principal entity for the entire Allegiant enterprise, which explains why its section 10.4 dispute resolution provides for arbitration of all disputes arising out of its operating agreement, including "all other agreements or other instruments executed in connection herewith." Thus, the 2016 Allegiant Realty Operating Agreement encompasses Langer's Arizona state claims, and they are subject to arbitration. Nonetheless, even if those claims fall outside of that agreement, the claims would still be subject to arbitration.
Langer continues to maintain on appeal that his Arizona state claims are based on Fein and others' breach of the 2017 Allegiant Holding C LLC Agreement. Because that agreement does not have an arbitration provision, but merely a New York forum selection clause, he asserts that his claims are not subject to arbitration. The argument is based on the contention that this agreement superseded the 2016 Allegiant Holding C Operating Agreement. The basis for this argument is flawed.
Contrary to the argument, the 2017 Allegiant Holding C LLC Agreement did not supersede the 2016 agreement. Section 10.14 of the 2016 agreement specifically provides that the "[a]greement may be amended, altered or modified only by the affirmative vote of the Majority-In-Interest of the Members," defined as members holding 75% or more of the company. There is no provision for superseding the agreement. Thus, the 2017 Allegiant Holding LLC Agreement was merely an amendment, alteration, or modification of the 2016 agreement, occurring when Fein, Berger, and Weintraub, a "majority-in-interest," executed and adopted it, rather than a superseding agreement. The continued existence of the 2016 Allegiant Holding C Operating Agreement means that section 10.4 dispute resolution remains extant. Further, it does not conflict with section 11.3's forum selection clause in the 2017 Allegiant Holding C LLC Agreement. In fact, harmonizing both agreements results in requiring Langer to arbitrate his Arizona state claims and ironically allowing the compulsory proceeding to be commenced in New York.[*11]
Unable to persuade us that his Arizona state claims are not to be arbitrated before the Beth Din pursuant to the 2016 Allegiant Realty Operating Agreement, Langer asserts that his claims should not be arbitrated because that agreement should be rescinded based on the doctrine of frustration of purpose. He argues that Supreme Court's substitution of Rabbi Grossman to be the designated arbitrator under the operating agreement to replace Rabbi Feiner, who purportedly declined his designation, frustrated the purpose of the arbitration provision, warranting rescission of that agreement. Although not argued, the 2016 Holding C Operating Agreement is implicated because it has the identical provision. The argument is unavailing.
"In order to invoke the doctrine of frustration of purpose, the frustrated purpose must be so completely the basis of the contract that, as both parties understood, without it, the transaction would have made little sense" (Center for Specialty Care, Inc. v CSC Acquisition I, LLC, 185 AD3d 34, 42 [1st Dept 2020], quoting Warner v Kaplan, 71 AD3d 1, 6 [1st Dept 2009], lv denied 14 NY3d 706 [2010]). In other words, frustration of purpose is found where there is a change in circumstances making one party's performance virtually worthless to the other, thus frustrating that party's purpose in making the contract (see PPF Safeguard, LLC v BCR Safeguard Holding, LLC, 85 AD3d 506, 508 [1st Dept 2011]). Further, a contractual party cannot rely on the failure of another to perform a condition precedent where that party has frustrated or prevented the occurrence of the condition (see Center for Specialty Care, Inc. v CSC Acquisitions I, LLC, 185 AD3d at 42). The doctrine is inapplicable to this case.
The mere fact that Rabbi Feiner may not be the designated arbitrator through no fault of either party does not frustrate the purpose of the 2016 operating agreements. The purpose of Allegiant Realty and Allegiant Holding C is to purchase real property and nursing home facilities, and to operate those facilities, respectively. Nothing in the record indicates that the purpose has been frustrated. Even if we were to consider the doctrine, the extreme remedy of rescission would be a disproportionate response, particularly when Langer and others agreed in the Berger stipulation to substitute Rabbi Feiner with a panel of three arbitrators, thus estopping Langer from objecting to this substitution, and in view of CPLR 7504, which provides a remedy for the purported declination ("If the . . . agreed method fails or for any reason is not followed, or if an arbitrator fails to act and his successor has not been appointed, the court, on application of a party, shall appoint an arbitrator").
Langer next argues that the Berger settlement agreement superseded Allegiant Realty's and Allegiant Holding C's operating agreements. Supreme Court denied that branch of the motion for renewal seeking the consideration of the settlement agreement on the ground that [*12]the explanation did not amount to a "reasonable justification" (see CPLR 2221[e][3]). A denial of a motion to renew is appealable (see Salvator v 55 Residents Corp., 195 AD3d 495, 495 [1st Dept 2021]).[FN8] The reply brief argues that Supreme Court erred in its finding and that Fein should have proffered the settlement agreement with his petition in the first place. These arguments are improperly raised for the first time on reply and will not be considered because they are factual and not legal in nature (see Mariette v Amber Ct. of Pelham Gardens LHCSA, LLC, 213 AD3d at 414; JPMorgan Chase Bank, N.A. v Luxor Capital, LLC, 101 AD3d at 576). Regardless, the record supports Supreme Court's finding. Thus, we affirm Supreme Court's denial of the renewal motion.
In any event, consideration of the settlement agreement would not alter our determination. Contrary to the argument, the settlement agreement did not supersede the relevant operating agreements. The settlement agreement's terms unequivocally limit their reach and application to Berger's claims. Indeed, there is no language in the settlement agreement indicating that it supersedes the 2016 operating agreements.
Lastly, Langer argues that Supreme Court's injunction and order compelling arbitration must be reversed because they impact Arizona's public policy and police powers. He asserts that his Arizona state action concerns the health and welfare of the citizens of Arizona, membership rights in limited liability companies governed by Arizona law, and breaches of fiduciary duties and torts committed in Arizona and arising out of Arizona statutory or common law. We find this argument unpersuasive (see Matter of New York City Tr. Auth. v Transport Workers Union of Am., Local 100, AFL-CIO, 99 NY2d 1, 7 [2002]; Matter of New York City Tr. Auth. v Phillips, 162 AD3d 93, 99 [1st Dept 2018], lv dismissed 31 NY3d 1139 [2018]).
As to the health and welfare concerns, the record indicates that litigation is ongoing in Arizona over the nursing home operations, with one nursing home under receivership. Thus, Arizona's police powers over the management and operation of the Allegiant skilled nursing facilities have not been negatively impacted whatsoever. Concerning Langer's other public policy arguments, they concern garden variety disputes amongst private parties that are subject to arbitration.
Based on the foregoing, we find that Supreme Court properly enjoined Langer from continuing to prosecute his Arizona state court action and compelled him to arbitrate those claims.
Accordingly, the orders of Supreme Court, New York County (Jennifer G. Schecter, J.), entered on or about March 13, June 22, and July 13, 2023, which, to the extent appealed from as limited by the briefs, respectively, granted the motion of petitioners Ariel Fein, Sarah Kruger, Alan Fein, and ASMSY, LLC for a preliminary injunction and directed respondent Irving Langer to take all steps necessary to stay an action in the Superior Court [*13]of the State of Arizona; granted the petition to compel respondent to arbitrate his claims against petitioners pursuant CPLR 7502(a); designated a substitute arbitrator; and denied respondent's motion for leave to reargue
and renew his opposition to the aforesaid motion and petition, should be affirmed, with costs.
M-2814 — Matter of Fein v Langer
Motion for leave to file a post-argument supplemental brief pursuant 22 NYCRR 1250.15(d), denied.
Orders, Supreme Court, New York County (Jennifer G. Schecter, J.), entered on or about March 13, June 22, and July 13, 2023, affirmed, with costs.
Opinion by Oing, J. All concur.
Webber, J.P., Oing, Rodriguez, Higgitt, Michael, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 8, 2024

Footnotes

Footnote 1: Allegiant Holding, LLC, which was equally owned by Fein and Langer, held 90% interest in Allegiant Realty. The remaining 10% ownership of Allegiant Realty was held by Allegiant Holding B, LLC, which was equally owned by Eliot Berger and Jake Weintraub.

Footnote 2: Allegiant Realty purchased four skilled nursing facilities in Mesa, Arizona: Allegiant Healthcare of Mesa, Springdale Village Healthcare, Springdale Village Assisted Living, and Springdale Village Independent Living.

Footnote 3: The operating entities are Allegiant Healthcare West, LLC, Allegiant Healthcare East, LLC, Allegiant Healthcare AL, LLC, and Allegiant Healthcare IL, LLC.

Footnote 4: Weintraub sold his interest in Allegiant Realty and Allegiant Holding C to Fein and Langer on April 1, 2018.

Footnote 5: Langer also consented and agreed to section 7, "Release"; section 10, "Confidentiality"; and section 11, "Non-disparagement."

Footnote 6: The appeal regarding the attorneys' fees award has been abandoned because no appellate argument challenging Supreme Court's determination was made (see Westman Realty Co., LLC v Nettles, 220 AD3d 557, 558 [1st Dept 2023]).

Footnote 7: The reply brief argues that Fein did not have Langer's consent to represent him in the two Berger litigations, that his present Arizona state claims involve misconduct allegedly perpetrated by Fein after the resolution of Berger's disputes, and that Fein is the one who should be estopped from arguing that the 2017 Allegiant Holding C LLC Agreement is invalid because the argument is inconsistent with his position in the Berger Special Proceeding. We decline to consider these arguments raised for the first time in reply because to do so would prejudice Fein insofar as denying him an opportunity to respond to contentions that are not legal in nature, but purely factual (see Mariette v Amber Ct. of Pelham Gardens LHCSA, LLC, 213 AD3d 413, 414 [1st Dept 2023]; JPMorgan Chase Bank, N.A. v Luxor Capital, LLC, 101 AD3d 575, 576 [1st Dept 2012]).

Footnote 8: Concerning the appeal of Supreme Court's denial of that branch of the motion seeking reargument, there is no appeal from such a denial (see Pigott v J.C. Happy Garden Corp., 216 AD3d 413, 414 [1st Dept 2023]).