RedHill Biopharma Ltd. v Kukbo Co., Ltd. (2025 NY Slip Op 05050)

RedHill Biopharma Ltd. v Kukbo Co., Ltd.

2025 NY Slip Op 05050

Decided on September 23, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 23, 2025

Before: Moulton, J.P., Mendez, O'Neill Levy, Michael, Chan, JJ. 

Index No. 653200/22|Appeal No. 4720|Case No. 2024-07649|

[*1]RedHill Biopharma Ltd., Plaintiff-Respondent,
v
Kukbo Co., Ltd., Defendant-Appellant.

Troutman Pepper Locke LLP, New York (Jinhee Kim of the bar of the State of California, admitted pro hac vice, of counsel), for appellant.
Haynes and Boone, LLP, New York (Rebecca Schwarz of counsel), for respondent.

Order, Supreme Court, New York County (Nancy M. Bannon, J.), entered on or about November 26, 2024, which, to the extent appealed from, granted plaintiff's motion for summary judgment on its causes of action for breach of contract (first and second causes of action) and for dismissal of defendant's counterclaims for anticipatory repudiation (third counterclaim), fraudulent inducement (fourth and fifth counterclaims), fraudulent misrepresentation (sixth counterclaim), and breach of contract (eighth and ninth counterclaims); denied defendant's motion for summary judgment on the first and second causes of action in the complaint and on its third, eighth, and ninth counterclaims; and awarded judgment in favor of plaintiff in the amount of $6.5 million plus costs and statutory interest from March 29, 2022, unanimously affirmed, without costs.
Plaintiff established its prima facie entitlement to summary judgment on the first and second causes of action in the complaint by presenting evidence that defendant breached the parties' agreements because it failed to make the contractually required payments. With respect to the parties' subscription agreement (SA), the record established that the parties performed their initial obligations: defendant paid plaintiff $4,998,619.44, and plaintiff transferred 827,586 American Depository Shares (ADS) to defendant in November 2021. However, the SA provided for a second tranche payment of $5 million, due no later than the six-month anniversary of the SA, upon the parties entering into a licensing agreement. The parties did, in fact, enter into an exclusive licensing agreement (ELA) within six months of entering into the SA, but defendant failed to make the second tranche payment.
Supreme Court properly determined that defendant failed to submit evidence establishing a breach of defendant's right to first offer under section 6 of the SA. Indeed, none of the emails and documents within the record suggest that plaintiff solicited third parties for a licensing agreement or that a separate licensing agreement ultimately materialized. Nor does the record suggest that receipt of government approval for Opaganib—plaintiff's drug intended to treat COVID-19—was an implied condition precedent of the agreement, and therefore, plaintiff breached the SA by failing to obtain governmental approvals. Defendant offers no support for this argument, essentially positing without any basis that an implied condition precedent can directly conflict with the express terms of the parties' agreements.
As to the ELA, Supreme Court properly found that defendant, and not plaintiff, breached that agreement. The record supports the court's finding that plaintiff provided defendant with the contracted-for intellectual property, and that it responded to defendant's inquiries regarding Opaganib. However, the record also shows that defendant failed to pay plaintiff the nonrefundable $1.5 million upfront payment within 15 days of the ELA's execution. Thus, it was plaintiff who was excused from fulfilling any further obligations (see e.g. Stadtmauer v Brel Assoc. IV, 270 AD2d 59, 60 [1st Dept 2000]). Nevertheless, the record aptly demonstrates that plaintiff continued to perform under the ELA while defendant continued to breach the ELA by failing to fulfill its payment obligation.
We further reject defendant's argument that plaintiff breached the ELA because it was unable to supply Opaganib to defendant. The evidence establishes that plaintiff had a sufficient supply of Opaganib on hand that it could have been delivered to defendant, but that the parties did not progress to executing a supply agreement based on defendant's failure to make the required payments (id.). The fact that Opaganib was not ultimately approved as a COVID-19 drug in Korea is irrelevant to the fulfillment of the parties' obligations to each other.
Supreme Court properly rejected defendant's frustration of purpose defense. As the court found, the frustration of purpose doctrine is inapplicable when "the event which prevented performance was foreseeable" (see e.g. Warner v Kaplan, 71 AD3d 1, 6 [1st Dept 2009], lv denied 14 NY3d 706 [2010]). The lack of regulatory approval for Opaganib was a foreseeable outcome given plaintiff's explicit disclosures that Opaganib might not obtain such approvals.
The court also properly dismissed defendant's counterclaims sounding in fraud. In its fourth counterclaim, defendant alleges that plaintiff fraudulently induced it to enter into the SA by omitting material information—namely, that plaintiff had planned to issue new ADS in a public offering one month after executing the SA, which would ultimately dilute the value of defendant's shares. However, nothing in the record supports a finding that plaintiff withheld material information from defendant that was solely in plaintiff's possession. On the contrary, plaintiff's annual SEC filings disclosed several risk factors to potential investors, including that it "may need to raise additional capital to achieve our strategic objectives and to execute our business plans." SEC filings further disclosed the risk that shareholders' holdings might become further diluted through public offerings. Given the parties' sophistication and the fact that defendant acknowledged in the SA that it had an opportunity to review plaintiff's SEC filings and ask such questions as it deemed necessary, its fraud claim is plainly foreclosed (see MBIA Ins. Corp. v Merrill Lynch, 81 AD3d 419, 419 [1st Dept 2011]). Additionally, defendant's contention that it was fraudulently induced into entering the SA is belied by defendant's later execution of the ELA, the amended SA, and the parties' letter agreement. Each of these agreements was signed after the November public offering occurred. Thus, as a matter of law, defendant's fourth counterclaim cannot overcome its subsequent ratifications of the SA (see e.g. Barrier Sys. v A.F.C. Enters, 264 AD2d 432, 433 [2d Dept 1999]).
In the fifth counterclaim, defendant alleges that plaintiff fraudulently induced it to enter the ELA based on its material omissions relating to the regulatory status of Opaganib. Similarly, in the sixth counterclaim, defendant alleges that plaintiff made affirmative material misrepresentations regarding the likelihood of Opaganib gaining regulatory approval despite knowing that it would never achieve such status in South Korea without conducting the necessary confirmatory studies. However, sections 9.3 and 9.2 of the ELA contained broad disclaimers, and specifically disclaimed any guarantee that Opaganib would achieve regulatory approval in Korea. The representations and warranties in the ELA were negotiated by the parties after defendant has specifically acknowledged its understanding that the regulatory authorities would require a confirmatory study. Further, the plain terms of the ELA provided that it would be solely defendant's responsibility to commercialize the product, conduct any necessary confirmatory studies, and ultimately achieve regulatory approval of Opaganib in Korea.
We have considered defendant's remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 23, 2025